**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Heather Rae DeAngelis, | No. CV-25-02753-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Anthony Bartoletti, et al., | |
| Defendants. | |

In 2022, Bueno Used Cars, Inc. ("Bueno") sued Heather Rae DeAngelis ("Plaintiff") in Arizona state court, alleging that Plaintiff failed to make payments on a used car she had purchased from Bueno.  The state-court litigation, which was contentious and had many twists and turns, eventually resulted in the entry of judgment in Bueno's favor as well as an award of attorneys' fees and costs to Bueno.  Following entry of the state-court judgment, Plaintiff—who is proceeding *pro se*—initiated this action.  Plaintiff initially requested over $100 million in damages and sought to assert an array of claims against an array of defendants, including two state-court judges and the Arizona State Bar (Doc. 1), but the Court dismissed many of those claims and defendants via screening orders (Docs. 8, 16).  The sole claims that remain in Plaintiff's Third Amended Complaint ("TAC") are a pair of civil RICO claims asserted against Bueno, its owner Anthony Bartoletti ("Bartoletti"), and a separate company called Transmission Factory.  (Doc. 14.)

Now pending before the Court is a motion to dismiss filed by Bueno and Bartoletti (together, "Movants").  (Doc. 20.)  For the reasons that follow, the motion is granted.

Additionally, although Transmission Factory filed an answer in lieu of filing a motion to dismiss (Doc. 21), "[a] District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981). That is the situation here, so Transmission Factory is dismissed as well.

**BACKGROUND**

I.    Factual Allegations

The following factual allegations, presumed true, are derived from Plaintiff's operative pleading, the TAC. (Doc. 14.)[1]

Bartoletti "is an individual residing in Arizona and the principal owner and President of [Bueno]." (*Id.* at 2.) Bueno "is an Arizona corporation engaged in the business of selling used motor vehicles." (*Id.*) Transmission Factory "is an Arizona corporation engaged in automotive repair services." (*Id.*)

The TAC alleges that "[b]eginning in 2013 and continuing to present, Defendants have operated a criminal enterprise within the meaning of 18 U.S.C. § 1961(4)." (*Id.*) "The enterprise consists of Defendants acting as an association-in-fact for the common purpose of systematically defrauding consumers through defective vehicle sales, identity theft, fraudulent warranty schemes, predatory lending practices, and quick repossession schemes." (*Id.* at 3.)

On August 24, 2021, "[Bartoletti], acting for [Bueno], sold Plaintiff a 2014 Volkswagen Passat (VIN: 1VWBT7A30EC112057) for $12,500.00." (*Id.*) "The vehicle came with an ASC Warranty (Agreement No. B21419199) through ASC Warranty Corporation." (*Id.*) "At the time of sale, Defendants knew the vehicle had serious mechanical problems, consistent with their systematic pattern of selling defective vehicles to dozens of victims over more than a decade." (*Id.* at 8.)

---

[1]    The Court, acknowledging Plaintiff's *pro se* status, notes that the TAC fails to adhere to Rule 10, which requires a party to state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

On January 26, 2022, "Plaintiff sent Defendants a legal demand letter seeking vehicle recission due to undisclosed defects and fraudulent practices." (*Id.*)

On February 24, 2022, "[i]n retaliation for Plaintiff's legal demand," "Defendants sent Plaintiff a threatening letter containing explicit photographs and threatening their use to coerce abandonment of Plaintiff's legal claims." (*Id.*)  "This blackmail was designed to prevent Plaintiff from accessing courts to seek redress for Defendants' fraudulent conduct affecting dozens of victims." (*Id.* at 9.)

On June 23, 2022, "after Defendants repossessed the vehicle, Defendants committed identity theft by using Plaintiff's name and warranty information without authorization." (*Id.* at 8.)  The TAC cites "Exhibit A" and describes it as "Invoice 2891 from Defendant Transmission Factory to 'bueno used cars' totaling $8,873.69 contains Plaintiff's name 'heather deangelis' and warranty number 'b21419199' without Plaintiff's authorization."[2] (*Id.*)  The TAC alleges that "[t]his use of Plaintiff's identity information constituted identity theft harming Plaintiff directly." (*Id.*)

"Following Plaintiff's vehicle repossession, Defendants sold the same defective 2014 Volkswagen Passat (VIN: 1VWBT7A30EC112057) to subsequent purchaser Cesar Pena." (*Id.* at 6.)  "Cesar Pena experienced identical mechanical problems with the vehicle that Plaintiff had experienced, proving that no actual repairs were performed despite the $8,873.69 fraudulent warranty claim." (*Id.*)  The TAC alleges that "[t]he warranty claim was fraudulent because no transmission repairs were actually performed, as proven by Cesar Pena's identical problems and [Bartoletti]'s admissions that 'he broke the car.'" (*Id.* at 8.)

In February 2023, "defense counsel Colin Quinn admitted in writing that 'Bueno has been accused online by others of similar issues.'" (*Id.* at 7.)  The TAC alleges that

---

[2]     The electronically filed version of the TAC contains no attached exhibits.  It only contains an "EXHIBIT LIST" that briefly describes the referenced exhibits. (Doc. 14 at 16.)  When filing an earlier iteration of the complaint, Plaintiff stated that, "due to ongoing technical difficulties in uploading documents through the PACER/ECF system," she would "instead provide her trial exhibits in hard copy." (Doc. 13.)  This issue has no bearing on the outcome here.

"[t]his admission by defendants' own counsel confirms the systematic pattern of fraud affecting dozens of victims as documents in the public online complaints spanning over 11 years." (*Id.*)

The TAC provides the following allegations of "SYSTEMATIC PATTERN – DOZENS OF DOCUMENTED VICTIMS OVER 11+ YEARS":

**RECENT VICTIMS (2024-2025) - CONTINUING CRIMINAL ACTIVITY**

**Victim Curious Twix (2 months ago, 2024)**: Despite being a repeat customer who "paid on time," was subjected to predatory lending with "really high down payment" and unchanged "interest rate," proving defendants "milk you for however much money they can get out of you."

**Victim Travis (7 months ago, 2024)**: Sold vehicle with known defects, told it needed "motor mount" but actually needed transmission mount, required $2,000 in repairs immediately after purchase, defendants "won't do shit about it."

**Victim Anthony Dubovik (7 months ago, 2024)**: Purchased gray 2014 Dodge Charger on May 3, 2024, experienced "5 check engine lights" requiring expensive repairs at victim's expense immediately after leaving lot.

**Victim Boss Willo (9 months ago, 2024)**: Victim of bait-and-switch scheme, approved for $2,500 down payment, but after taking debit card to back room, demanded $4,000 down payment, victim warned "SCAM SCAM SCAM do not go here."

**Victim Jesus Cereceres (9 months ago, 2024)**: "Told one thing on the phone, show up and told something totally different," experienced "same old car salesman pitch."

**2023 VICTIMS - SYSTEMATIC FRAUD CONTINUING**

**Victim Zachary Snyder (1 year ago, 2023)**: Purchased vehicle with "so many hidden issues," concluded "You'll find nicer cars at a junkyard," stated "the way they do business is horrible!"

**Victim Tyshell Washington-Ratcliff (1 year ago, 2023)**: Financed vehicle March 2023, by July 2023 "car isn't holding oil at all," August 2023 "engine broke," forced to pay for expensive engine replacement within months of purchase.

**Victim Carlos (11 months ago, 2023)**: "They sell worthless cars that break down as soon as you leave the lot."

- 4 -

**2022-2021 VICTIMS - MULTI-YEAR PATTERN**

**Victim Max Oliveros (2 years ago, 2022)**: "They sold me a broken car transmission was broken door panels were loose bad tires on the vehicle. Just everything was bad with the car."

**Victim Apex Loner (2 years ago, 2022)**: "Do not buy there .. car will literally broke down on u.. worst place ever to buy a car.. and all of them are liars."

**2020-2019 VICTIMS - ESTABLISHED PATTERN**

**Victim Jorge Acosta (3 years ago, 2020)**: Second-time buyer, "always had issues with the vehicles," first vehicle "broke down not even a month of owning it," second vehicle "broke down" as well.

**Victim Esmeralda Arras (3 years ago, 2020)**: Vehicle "immediately the engine stopped working," forced to replace "engine, gas pump, gear and battery," repossessed after being late with one payment.

**2018-2016 VICTIMS - LONG-TERM SYSTEMATIC FRAUD**

**Victim Bk Hunt (5 years ago, 2018)**: "ONE PMT BEHIND AND THEY CAME AND TOOK MY CAR," charged $1,140 in fees for vehicle return after quick repossession.

**Victim Sandy Santiago (5 years ago, 2018)**: "AC wasn't working properly" during test drive, promised repairs, "after 2 weeks AC went down," charged additional "$300 because the AC not working at all," paid "$2,500 down with $460 monthly payment! With 29%APR!"

**Victim Sabrina Martinez (5 years ago, 2018)**: Paid "$8,887" cash for Mercedes, financed additional vehicle, repossessed for being "$50 short," forced to "pay car in full" after owning only "month and a half."

**2016-2014 VICTIMS - DECADE-LONG CRIMINAL ENTERPRISE**

**Victim Just 4 Trees AZ (6 years ago, 2016)**: Told "dont worry about it" regarding late payments, then "Wake up to car gone," forced to replace multiple expensive parts, warned "check their vehicles before you purchase."

**Victim Dominica Rain (6 years ago, 2016)**: "If I could give this place NO stars, I would," described "customer service is absolutely atrocious," "wasted hours of our life."

**Victim Zerick Mikesell (8 years ago, 2014)**: Vehicle "almost paid off," late "only a week and a half," vehicle repossessed, prevented victim from starting new job.

**2013-2011 VICTIMS - CRIMINAL ENTERPRISE ORIGINS**

**Victim Tamara Sandoval (11 years ago, 2011)**: Paid off Volkswagen Passat completely, promised positive credit reporting, bought 2003 Chevrolet Tahoe, repossessed for being "one day late."

(*Id.* at 2-6.)

In July 2024, "Plaintiff filed an official complaint with the Arizona Department of Transportation (ADOT) Enforcement and Compliance Division regarding Defendants' systematic criminal conduct (ADOT Case #24-049651)." (*Id.* at 9.) "The comprehensive ADOT investigation officially validated Plaintiff's allegations, documenting systematic title fraud, illegal repossession, warranty fraud, and evidence destruction by Defendants." (*Id.*) "Following its investigation, ADOT officially referred Plaintiff's case to the Arizona Attorney General's Office Consumer Division for criminal prosecution, concluding the conduct warranted criminal investigation beyond regulatory enforcement." (*Id.*)

The TAC alleges that "ADOT investigators officially documented that Plaintiff had previously reported 'similar fraudulent practices in February 2024 regarding another vehicle,' providing government confirmation of Defendants' systematic criminal enterprise affecting multiple victims." (*Id.*) "The government investigation established a clear pattern of fraudulent conduct spanning multiple transactions and victims, supporting the RICO allegations." (*Id.*)

The TAC further alleges that "[d]uring the ADOT investigation, . . . Bartoletti admitted to government investigators that he 'stopped making payments' to illegally repossess vehicles from customers, constituting official admissions of systematic criminal conduct." (*Id.* at 10.)

Citing "Exhibit J," the TAC alleges that "[t]he ADOT investigation documents the following systematic violations":

Title fraud and improper vehicle titling procedures; illegal repossession practices and self-dealing; warranty fraud schemes using customer identities; evidence destruction through title manipulation; pattern of similar fraudulent practices with multiple victims.

(*Id.* at 10, cleaned up.)  The TAC alleges that "[t]he enterprise has systematically defrauded dozens of consumers over more than a decade, generating substantial fraudulent profits through coordinated criminal activity."  (*Id.* at 11.)

II.    Procedural History

On August 4, 2025, Plaintiff filed the complaint (Doc. 1), a motion for temporary restraining order ("TRO") (Doc. 2), and an application to proceed in forma pauperis ("IFP") (Doc. 3).

On August 27, 2025, the Court granted the IFP application, denied the TRO motion, and dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2) with leave to amend. (Doc. 8.)

On September 10, 2025, Plaintiff filed a First Amended Complaint.  (Doc. 9.)

On September 11, 2025, Plaintiff filed a Second Amended Complaint.  (Doc. 12.)

On September 17, 2025, Plaintiff filed the TAC.  (Doc. 14.)[3]

On December 15, 2025, Movants filed the pending motion to dismiss.  (Doc. 20.) That motion is now fully briefed.  (Docs. 37, 38.)[4]  Neither side requested oral argument.

On April 20, 2026, during the scheduling conference, the Court granted Defendants' request to stay discovery until after ruling on the motion to dismiss.  (Doc. 40.)

On April 26, 2026, Plaintiff purported to file a sur-reply.  (Doc. 41.)

On April 28, 2026, Movants filed a motion to strike Plaintiff's sur-reply.  (Doc. 42.)

**DISCUSSION**

I.    Motion To Strike Plaintiff's Sur-Reply

Before addressing Movants' motion to dismiss, the Court first considers Movants' motion to strike Plaintiff's sur-reply.

Under LRCiv 7.2(m)(1), "a motion to strike may be filed . . . if it seeks to strike any

---

[3]    The Court previously noted that although "the federal rules did not permit [Plaintiff] to file the TAC without first seeking leave," "due to Plaintiff's *pro se* status," among other things, "the Court [would] deem the TAC the operative pleading. (Doc. 16 at 2.)

[4]    Plaintiff filed two identical responses.  (Docs. 36, 37.)  The Court will treat Plaintiff's second filed response as the operative response.

- 7 -

part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." As Movants correctly note, "neither the Federal Rules of Civil Procedure nor the District's Local Rules entitle a party to a sur-reply as a matter of right." *Burgess v. Shinn*, 2022 WL 2341218, \*1 (D. Ariz. 2022). *See also Lane v. Rocket Mortg. LLC*, 2025 WL 2229923, \*2 (D. Ariz. 2025) ("Sur-replies and sur-responses are not authorized by Federal Rule of Civil Procedure 7, any other Federal Rule of Civil Procedure, or the District of Arizona's Local Rules, absent prior leave of court."). Here, Plaintiff did not seek leave to file a sur-reply.

Even if Plaintiff had sought leave, "[s]ur-replies are highly disfavored and permitted only in extraordinary circumstances," and "[a]lthough the Court may in its discretion allow the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fitzhugh v. Miller*, 2020 WL 1640495, \*9 (D. Ariz. 2020) (citations omitted). Those circumstances are not present here. Movants have raised no new arguments in their reply brief that warrant a sur-reply. Moreover, Plaintiff's sur-reply largely advances the same arguments made in her response brief. The only new information contained within Plaintiff's sur-reply is the inclusion of "Exhibit A," which Plaintiff describes as the "Arizona Department of Transportation Office of Inspector General ('ADOT OIG') Report." (Doc. 41 at 7.) Although "[t]he Court is mindful that, in this Circuit, courts are required to afford *pro se* litigants additional leniency," "the leniency afforded . . . need not extend to permitting surreplies as a matter of course, and the Court is not inclined to grant such leave absent a showing of good cause. The purpose of a surreply is to afford the nonmoving party an opportunity to respond to new material raised for the first time in the movant's reply." *Felix v. Cazores*, 2025 WL 2718634, \*2 (E.D. Cal. 2025) (cleaned up). Accordingly, Movants' motion to strike the sur-reply is granted.

The Court also clarifies that even if the sur-reply were allowed to stand, it would not change the outcome. Plaintiff submits the sur-reply, and in turn Exhibit A, for the "limited and proper purpose" of supporting her arguments regarding claim and issue

preclusion. (Doc. 41 at 8.) However, as outlined below, the Court does not decide the motion to dismiss on those grounds.[5]

II.    Motion To Dismiss

A.    **Judicial Notice**

Movants seek judicial notice of 13 exhibits, ranging from the parties' sales contract to various state-court documents. As Movants' motion makes clear, they are seeking judicial notice of these exhibits for purposes of their claim and issue preclusion arguments. (*See generally* Doc. 20.) However, as detailed below, the Court does not decide Movants' motion on claim or issue preclusion grounds. Thus, "[t]he Court finds these [exhibits] are not relevant or helpful to its analysis and DENIES the request for judicial notice as to those exhibits." *In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147, 1153 (N.D. Cal. 2023). *See also Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1147 (S.D. Cal. 2022) ("While the 10-K filings are proper for judicial notice, they are not relevant to the Court's analysis. Accordingly, the Court DENIES Vector Lopez's request for judicial notice of Genasys' Form 10-Ks filed with the SEC."); *Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 793 (8th Cir. 2012) ("Courts are not required to take judicial notice of irrelevant materials.").[6]

B.    **Legal Standard**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re*

---

[5]    The Court further notes that although the TAC alleges that the ADOT Report "established a clear pattern of fraudulent conduct spanning multiple transactions and victims, supporting the RICO allegations" (Doc. 14 at 9), the ADOT Report attached to Plaintiff's sur-reply appears to support the opposite conclusion. (*See, e.g.*, Doc. 41-1 at 4 ["I went over the Title History with [Plaintiff], . . . it appears the proper steps had been taken by the dealer when the vehicle was titled in her name."]; *id.* at 8 ["[N]o violations were found to have been committed by [Bueno] regarding issuance of a vehicle title to [redacted] after the sale date of 08/24/21."].)

[6]    Movants also attach an "Exhibit A" to their reply brief. (Doc. 38-1.) Movants, however, do not request judicial notice of that exhibit. (*See generally* Doc. 38.) To the extent Movants are making such a request, that request is denied for the aforementioned reasons. Moreover, a "request for the Court to take judicial notice of [an exhibit], presented for the first time in [Movants'] reply brief, is inappropriate." *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1284 (C.D. Cal. 2016).

*Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

### C.    **RICO Claims**

The TAC sets forth two claims for "RICO Violations": Count One is titled "conducting affairs of enterprise through racketeering (18 U.S.C. § 1962(c))" and Count Two is titled "conspiracy to violate RICO (18 U.S.C. § 1962(d))." (Doc. 14 at 11-13.)

Under 18 U.S.C. § 1962(c), it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." And under 18 U.S.C. § 1962(d), it is illegal "for any person to conspire to violate" 18 U.S.C. § 1962(c).

#### 1.    The Parties' Arguments

Movants seek dismissal for three reasons: (1) claim preclusion, (2) issue preclusion, and (3) failure to state a claim. (Doc. 20 at 8-15.) Because the third argument is dispositive, the Court need not address the first two arguments.

As for the third argument, Movants contend that "Plaintiff has failed to plead facts sufficient to establish [RICO] claims." (*Id.* at 12.) Movants assert that "'[p]attern of racketeering activity' is a defined term and requires at least two acts of 'racketeering

activity.'" (*Id.* at 13, citation omitted.) Movants argue that "Plaintiff alleges that Defendant[s'] racketeering activities include: (1) defrauding consumers through defective vehicle sales; (2) identity theft; (3) fraudulent warranty schemes; (4) predatory lending practices; and (5) quick repossession schemes" and contend that "Plaintiff has failed to plead or establish that any of the above-referenced activities actually constitute crimes or plead facts to establish that the actions of Defendants would be indictable under State or Federal law as required under 18 U.S.C. §§ 1961 & 1962(c) or (d)." (*Id.* at 13-14.) Movants also argue that although it is possible for "'identity theft' and 'fraudulent warranty schemes' . . . to constitute a crime, the facts alleged do not support such an allegation." (*Id.* at 14.) Next, Movants argue that "a civil RICO claim must also comply with Fed. R. Civ. P. 9(b)'s particularity requirements," and here "the actions Plaintiff references as it pertains to the Yelp reviews are so vague and unintelligible that it is impossible to discern whether an alleged RICO violation occurred." (*Id.* at 13-14.)[7]

In response, Plaintiff argues that "the RICO claims are properly pleaded." (Doc. 37 at 18.) Specifically, Plaintiff argues that "Defendants' motion ignores that the TAC alleges wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341) as predicate acts." (*Id.*) Plaintiff also argues that the TAC "specifically identifies the following predicate acts with the particularity required by Rule 9(b)": *first*, "Fraudulent Warranty Claim (Motor)" when Transmission Factory submitted an invoice to ASC Warranty for motor installation even though "[t]he motor was never installed"; *second*, "Fraudulent Warranty Claim (Radiator)" when "claims were submitted to ASC Warranty . . . despite [Plaintiff] never authorizing it"; *third*, "Fabricated Repair Photographs" when "[t]he enterprise transmitted falsified photographs to ASC Warranty electronically, depicting completed repairs never performed"; *fourth*, "Identity Theft and Account Alteration" when "Defendants impersonated Plaintiff to submit warranty claims"; *fifth*, "Deceptive Sale

---

[7] The "Yelp reviews" referenced by Movants relate to the "DOCUMENTED VICTIMS" section of the TAC detailed above. (Doc. 14 at 3-6. *See also* Doc. 20 at 7 [categorizing the TAC's documented victims as "Yelp reviews"].) Whether the allegations in the TAC relating to documented victims come from Yelp reviews or elsewhere is immaterial to the dismissal analysis.

Communications" when Defendants "made misrepresentations about the vehicle's condition via telephone, internet, and in-person communications"; and *sixth*, "Ongoing Predatory Lending Solicitation" when "Inteaz—a family member of Transmission Factory's operators—solicited Plaintiff via text message to participate in a Snap Finance lending fraud scheme, constituting additional wire fraud." (*Id.* at 18-20.) Plaintiff further argues that the following "Arizona statues qualify[] as RICO predicates under 18 U.S.C. § 1961(1)(A): A.R.S. § 13-2310 (Fraudulent schemes and artifices, Class 2 felony); A.R.S. § 13-2008 (Taking identity of another, Class 4 felony); and A.R.S. § 13-1804 (Theft by extortion, Class 3 felony)." (*Id.*) Next, Plaintiff argues that "a pattern of racketeering" is established because "[a]ll predicate acts share the same participants, methods, victims, and purpose." (*Id.* at 21.) Finally, Plaintiff argues that "[t]he TAC alleges an association-in-fact enterprise." (*Id.*)

In reply, Movants argue that "Plaintiff has failed to plead sufficient facts to establish the elements of the purported claims." (Doc. 38 at 9.) As for wire fraud, Movants argue that "Plaintiff has failed to establish the elements of wire fraud with any particularity" and that "Plaintiff's only factual allegations that she contributes to her wire fraud claim include a person or company called 'Inteaz' soliciting Plaintiff via text message to participate in vehicle refinancing, and the electronic submittal of warranty claims to ASC Warranty." (*Id.* at 9-10.) Movants also argue that "Plaintiff alleges no facts as to any scheme or intent to defraud; instead, she only alleges conclusory statements" and that "Plaintiff's own musings regarding the warranty process between Bueno and ASC warranty certainly do not constitute a claim for wire fraud." (*Id.* at 10.) As for mail fraud, Movants argue that "the victim of any warranty fraud would be ASC Warranty, not Plaintiff" and that there are no facts "that Bueno ever used the U.S. mails to submit a warranty claim." (*Id.*) As for identity theft, Movants argue that "Plaintiff misapplies how vehicle warranties work. Vehicle warranties are attached to the vehicle, not the owner." (*Id.*) Movants next argue that "Plaintiff is not a victim of the alleged predicate acts." (*Id.*) Specifically, Movants argue that the victim of any theoretical mail fraud and wire fraud "would be ASC," not

Plaintiff. (*Id.* at 11.)  Finally, Movants argue that "[a]n essential element of a successful RICO pleading is that the predicate acts Plaintiff pleads must be related to each other or part of a common scheme" but here "Plaintiff alleges no pattern of activity." (*Id.*)  Movants argue that the "nineteen . . . Yelp reviews" are "vague and disconnected, with no information as to the time, place, and manner of the customer's complaints." (*Id.*)  Movants further argue that "the Yelp reviews *do not* allege . . . wire fraud, mail fraud, identity theft, warranty fraud, and extortion." (*Id.*)

> 2.      Analysis

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters and Joiners of Am. v. Bldg. & Constr. Trades Dep't., AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (cleaned up).

Starting with the fourth element, "racketeering activity" "encompass[es] dozens of state and federal offenses, known in RICO parlance as predicates." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 329-330 (2016).  Plaintiff's response brief clarifies that the TAC relies on "wire fraud," "mail fraud," and several "Arizona statutes" as predicate acts. (Doc. 37 at 18-20.)   The TAC, however, does not plausibly allege that Defendants committed any of those predicate acts.

"Claims of wire fraud and mail fraud under 18 U.S.C. §§ 1341 and 1343 require three elements: (i) the formation of a scheme to defraud, (ii) the use of the mails or wires in furtherance of that scheme, and (iii) the specific intent to defraud." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 821 (N.D. Cal. 2016), *aff'd*, 890 F.3d 828 (9th Cir. 2018).  Plaintiff argues that the TAC "identifies the following predicate acts" relating to wire fraud and mail fraud: (1) "Fraudulent Warranty Claim (Motor)"; (2) "Fraudulent Warranty Claim (Radiator)"; (3) "Fabricated Repair Photographs"; (4) "Identity Theft and Account Alteration"; (5) "Deceptive Sales Communications"; and (6) "Ongoing Predatory Lending Solicitation." (Doc. 37 at 18-20.)

As an initial matter, and as previously explained (Doc. 8 at 7), several of the alleged predicate acts identified by Plaintiff—specifically the first, second, and third—are not actionable because Plaintiff was not the purported victim.  Instead, the purported victim was ASC, the warranty company (or, perhaps, the subsequent purchaser of the vehicle, Cesar Pena). *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496-97 (1985) ("The [civil RICO] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. . . .  A defendant who violates section 1962 is not liable . . . to those who have not been injured.") (cleaned up).  As for the remaining allegations, they do not rise to the level of mail fraud or wire fraud.  Apart from one conclusory allegation (Doc. 14 at 12 ["Mail fraud through fraudulent warranty claims sent via mail to interstate companies"]), the TAC fails to allege Defendants "sent or delivered [mail] by the Postal Service [or] . . . any private or commercial interstate carrier" as required to sustain a claim for mail fraud.  *Humphreys v. City of Coolidge*, 2019 WL 316240, *5 (D. Ariz. 2019) (quoting 18 U.S.C. § 1341).  In a similar vein, the only alleged use of an interstate wire Plaintiff identifies in her response brief (Doc. 37 at 20 [predatory lending solicitation through text message]), is nowhere to be found in the TAC.[8]

Plaintiff also cites three Arizona statutes that she argues qualify "as RICO predicates under 18 U.S.C. § 1961(1)(a)": (1) "A.R.S. § 13-2310 (Fraudulent schemes and artifices, Class 2 felony)"; (2) "A.R.S. § 13-2008 (Taking identity of another, Class 4 felony)"; (3) "A.R.S. § 13-1804 (Theft by extortion, Class 3 felony)."  (Doc. 37 at 20.)  Plaintiff, however, provides no argument as to how Defendants' conduct fits within the ambit of these statutes, and the Court is unpersuaded that it does.

Nevertheless, even assuming that Plaintiff had properly alleged that Defendants committed a requisite predicate act of mail fraud, wire fraud, or a violation of one of the Arizona statutes, "the Ninth Circuit has held that allegations of one scheme, perpetrated

---

[8]    Plaintiff appears to argue that the text message solicitation is "newly obtained evidence" (Doc. 37 at 8); however, Plaintiff "may not add new facts through a response brief." *Grae-El v. City of Seattle*, 2022 WL 1154311, *6 n.7 (W.D. Wash. 2022).

against a single victim, are typically insufficient to establish a pattern for civil RICO purposes." *Aviva USA Corp. v. Vazirani*, 2012 WL 1648419, \*3 (D. Ariz. 2012), *aff'd*, 632 F. App'x 885 (9th Cir. 2015). Thus, the TAC must also sufficiently establish a pattern of racketeering activity, beyond just actions perpetrated against Plaintiff. "[T]he term 'pattern,' as used in RICO, requires a showing that (1) the 'predicate acts are related, and (2) that such activity amounts to or poses a threat of continued criminal activity.'" *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1477 (C.D. Cal. 1991) (citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989)). *See also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) ("At a minimum, a 'pattern' requires that the predicate criminal acts be 'related' and 'continuous.') (citation omitted). Thus, Plaintiff must allege that Defendants "have engaged in a pattern of ongoing activity involving [the predicate acts] with respect to other victims." *Pilz v. Pere*, 2008 WL 11512195, \*2 (E.D. Va. 2008).

The TAC fails to do so. Although the TAC provides 19 allegations of what it characterizes as a "systematic pattern" of "documented victims," the 19 allegations are devoid of facts necessary to establish the predicate acts on which Plaintiff bases her RICO claims—mail fraud, wire fraud, and the Arizona statutes. The 19 allegations detailed in the TAC fail to allege the "use of the mails or wires in furtherance of" a scheme to defraud as required under 18 U.S.C. §§ 1341 and 1343. *Planned Parenthood Fed'n of Am., Inc.*, 214 F. Supp. 3d at 821. Nor are the allegations sufficient to establish violations of A.R.S. § 13-2310, A.R.S. § 13-2008, or A.R.S. § 13-1804. In fact, several of the allegations merely appear to be customer service grievances. (*See, e.g.*, Doc. 14 at 4 ["'Told one thing on the phone, show up and told something totally different,' experienced 'same old car salesman pitch.'"]; *id.* at 6 ["'If I could give this place NO stars, I would,' described 'customer service is absolutely atrocious,' 'wasted hours of our life.'"].)

Moreover, even setting aside Plaintiff's failure to adequately allege a pattern of racketeering activity, "fraud-based RICO claims may be dismissed if they fail to satisfy Rule 9(b)'s requirement that fraud claims be plead with particularity." *Comwest*, 765 F.

Supp. at 1476. *See also Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008) ("Rule 9(b) 'applies to civil RICO fraud claims.'"); *Lambert v. Givens*, 2026 WL 1363070, *6 (D. Idaho 2026) ("Mail fraud and wire fraud require a scheme to defraud, use of the mails or wires in furtherance of the scheme, and specific intent to defraud; a RICO claim predicated on mail or wire fraud, as here, is subject to Rule 9(b)'s heightened pleading standard."). The TAC does not come close to meeting Rule 9(b)'s heightened pleading standard. "Most of the alleged predicate acts are general statements about actions committed by [Defendants] that fail to identify the 'who, what, when, where, and how' of the misconduct charged. . . . [T]hese problems are exacerbated because [Plaintiff] lump[s] together the defendants without identifying the particular acts . . . that each defendant committed." *Mostowfi*, 269 F. App'x at 624. By the same token, the TAC "does not identify a specific fraudulent mailing or wire transmission for each alleged predicate act, the sender and recipient of that communication, the precise false statement transmitted by mail or wire, or why that statement was false when made." *Lambert*, 2026 WL 1363079, *7. The same Rule 9(b) deficiency applies to Plaintiff's attempt to establish predicate acts under the Arizona statutes. *Cf. Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. 2001) ("Counts Two and Three are founded on allegations that Defendant violated Arizona statutory law because of its false and deceptive representations about its insurance policies. Thus, the Court agrees with Defendant that because Counts Two and Three rely on classic allegations of fraud and misrepresentation, they are subject to Rule 9(b)'s specificity requirement.") (citation omitted).

Ultimately, Plaintiff cannot satisfy the requirements of her § 1962(c) claim, and, as a result, her "[§] 1962(d) claim must fail as well." *Wagh v. Metris Direct, Inc.*, 2002 WL 257846, *4 (N.D. Cal. 2002), *aff'd*, 363 F.3d 821 (9th Cir. 2003). *See also Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 229 (3d Cir. 2007) ("The District Court also dismissed Appellants' RICO conspiracy claim, explaining that their inability to state a claim under § 1962(c) doomed their claim under § 1962(d). We find no error in this regard because '[a]ny claim under section 1962(d) based on conspiracy to violate the other

subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.'") (citation omitted).

D.    **Explicit Photograph Claims**

Movants argue that "Plaintiff makes vague allegations of extortion and blackmail in her TAC that are not referenced within her two RICO counts" and that, nevertheless, "[t]he applicable statute to Plaintiff's unclear claims is A.R.S. § 13-1425."  (Doc. 20 at 15.)  Movants then proceed to argue why such claims should be dismissed.  (*Id.* at 15-16.)

In response, Plaintiff asserts that her "private images claim is timely and meritorious."  (Doc. 37 at 24.)

As an initial matter, the Court notes that the TAC contains no reference to A.R.S. § 13-1425.  (*See generally* Doc. 14.)  Nevertheless, even assuming that the TAC properly pleads a claim under A.R.S. § 13-1425, "[h]aving dismissed [Plaintiff]'s RICO claim for failure to state a claim upon which relief can be granted, the Court declines to exercise supplemental jurisdiction over the remaining state law claims."  *Vaugh v. Diaz*, 2013 WL 150487, *4 (S.D. Cal. 2013).  *See also Lambert*, 2026 1363070 at *9 ("[T]he only claim over which the Court has original jurisdiction is Plaintiff's federal RICO claim.  Because the Court dismisses Plaintiff's only federal claim at the pleading stage, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367(c)(3).").[9]

III.    Leave To Amend

Plaintiff did not request leave to amend in her response brief.  Nevertheless, the rule in the Ninth Circuit is that "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up).  "[B]efore dismissing a pro se complaint the district court must provide the litigant

---

[9]    Although the TAC also requests that the Court "[c]ertify this action as a class action under Federal Rule of Civil Procedure 23 to represent all victims of defendants' systematic criminal enterprise over the past 11+ years" (Doc. 14 at 14), Plaintiff's response makes clear that "[n]o class certification is sought or required" (Doc 37 at 25).

with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), as amended (May 22, 1992).

In a previous order, the Court specifically instructed Plaintiff regarding the deficiencies in her complaint and cautioned that "it [would] give [Plaintiff] one final opportunity to" properly plead a valid civil RICO claim.  (Doc. 8 at 8-9.)  Plaintiff has failed to do so.  Accordingly, the Court concludes that Plaintiff would not be able to cure the deficiencies if given yet another opportunity to do so.  *Ferdik*, 963 F.2d at 1261 (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").  Thus, the Court will dismiss the TAC without leave to amend.

Accordingly,

**IT IS ORDERED** that:

1.     Movants' motion to dismiss the TAC (Doc. 20) is **granted**.

2.     Movants' motion to strike (Doc. 42) is **granted**.

3.     The Clerk shall enter judgment accordingly and terminate this action.

Dated this 4th day of June, 2026.

Dominic W. Lanza
United States District Judge